**REO MOTORS, Inc. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 10661.

United States Court of Appeals
Sixth Circuit.

Nov. 29, 1948.

---

James O. Wynn, of New York City (Robert H. Montgomery, of New York City, on the brief; James O. Wynn, George G. Blattmachr and G. Harold Blattmachr, all of New York City, of counsel), for petitioner.

S. Dee Hanson, of Washington, D. C. (Theron Lamar Caudle, George A. Stinson and Carlton Fox, all of Washington, D. C., on the brief), for respondent.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The Reo Motors, Inc., seeks a redetermination of the deficiency found by the Commissioner in Petitioner's income tax and excess profit tax for the calendar year 1942 in the respective amounts of $565,971.65 and $268,655.14. The Tax Court sustained the Commissioner. Reo Motors, Inc., 9 T.C. 314.

The Petitioner was organized on January 2, 1940 under the laws of Michigan and is engaged in the business of manufacturing motor vehicles with its principal office in Lansing, Michigan. Its tax returns for the calendar year 1942 were prepared on an accrual basis.

In January 1940, Petitioner acquired all the stock of Reo Sales Corporation, (hereinafter called Reo Sales), a sales agent for the Petitioner, which it continued to own until the dissolution of the subsidiary. The adjusted basis for determining gain or loss from the sale or other disposition of such stock was $1,551,902.79.

On February 1, 1941, Reo Sales was indebted to Petitioner in the sum of $1,263,707.57. Reo Sales was dissolved as of February 1, 1941 and all of its assets, subject to all its liabilities, were transferred to the Petitioner. The net value of such assets was $1,048,219.95. Petitioner's loss with respect to the stock of Reo Sales was a long term capital loss under the law applicable to the taxable year 1941, and was so claimed by the Petitioner and allowed by the Commissioner in Petitioner's return for 1941.

Petitioner's gross income for the taxable year 1941 was $2,573,259.89. It realized no gains from the sale or exchange of capital assets. Deductions allowable to the Petitioner amounted to $2,215,727.08, not including any deduction with respect to the stock of Reo Sales, any deduction for depletion, any net operating loss deduction, or any deduction for losses from sales or exchanges of capital assets.

For the taxable year 1942, the net income of Petitioner was $1,926,136.34, without allowance of a net operating loss deduction or any depletion deduction. It realized no gains and sustained no losses from sales or exchanges of capital assets. In computing its normal taxable net income the Petitioner included as a deduction a net operating loss carry-over from 1941 sustained by reason of its ownership of the stock of Reo Sales. It contended that under Section 23(g) (4) of the Internal Revenue Code as amended by the Revenue Act of 1942, 26 U.S.C.A. § 23(g) (4), the loss in 1941 was not a capital loss, but should be treated as an ordinary loss for the purpose of determining the 1941 net operating loss deduction carried over to 1942. The Commissioner, however, ruled that the stock was a capital asset under the Internal Revenue Code for 1941; the loss sustained in 1941 by reason of its ownership constituted a capital loss in 1941 and was so allowed; the 1942 Amendment was not applicable to the transaction; and that the loss could not be included in computing a net operating loss deduction in 1941 and carried forward into the 1942 return. He accordingly rejected the deduction in determining the net taxable income for 1942.

Under Sec. 23(g) of the Internal Revenue Code as it existed in 1941, the Petitioner, in computing its net income, was allowed a deduction for capital assets becoming worthless during the taxable year. Under that law, the loss sustained by the Petitioner in 1941 by virtue of its ownership of the Reo Sales Corporation stock was a capital loss, as distinguished from an operating loss, and was correctly treated as such in its return for the 1941 taxable year. Section 23(g) was amended by Section 123 of the Revenue Act of 1942 by adding Sec. 23(g) (4) which provided that for the purpose of determining capital losses by reason of capital assets becoming worthless during the taxable year "stock in a corporation affiliated with the taxpayer shall not be deemed a capital asset." It also defined an affiliated corporation, which definition, it is agreed by the parties, included the Reo Sales Corporation. Accordingly, if the loss had occurred in 1942 it would not have been a capital loss under the 1942 Amendment, but would have been

a loss which could be included in the net operating loss computation and deduction under Sections 23(s), 122(a), and 122(b) (2), 26 U.S.C.A. §§ 23(s), 122(a), (b) (2).

Section 23(s) of the Internal Revenue Code, as amended in 1939, provides that in computing net income there shall be allowed as a deduction "For any taxable year beginning after December 31, 1939, the net operating loss deduction computed under section 122." Section 122(a) provides that "the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d)." Section 122 (b) (2) provides for a net operating loss carry-over for each of the two succeeding taxable years. If there was a net operating loss for 1941 under Section 122(a), the amount thereof constituted a net operating loss carry-over under Section 122(b) (2), allowable as a deduction under Section 23(s) in computing the amount of Petitioner's net income for 1942. The question presented for decision is whether the Petitioner is entitled, by reason of the 1942 Amendment to a net operating loss deduction in 1942, arising out of a loss due to the worthlessness in 1941 of the stock of Reo Sales.

We are of the opinion that the ruling of the Tax Court is correct and that Section 23(g) (4) added by the Revenue Act of 1942, changing the character of stock in an affiliated corporation from a capital asset to a non-capital asset, was not applicable to the year 1941. This would seem to necessarily follow from Section 101 of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Acts, p. 167, which provides that "Except as otherwise expressly provided, the amendments made by this title shall be applicable only with respect to taxable years beginning after December 31, 1941." There was no other express provision with respect to the applicability of Section 23 (g) (4). To apply Section 23(g) (4) to the taxable year 1941 would be in direct violation of this express provision of the 1942 Amendment. Petitioner, however, urges upon us several reasons why in its opinion that provision is not decisive of the case. We discuss them briefly.

Most of them stem from the rulings of the Tax Court and the Court of Appeals for the Fifth Circuit in the case of Moore, Inc., 4 T.C. 404, affirmed 151 F.2d 527. That case involved a consideration of Section 122(d) (4) of the Internal Revenue Code as amended by the Revenue Act of 1942, dealing with the allocation of capital losses against capital gains. Both the Tax Court and the Court of Appeals held that with respect to taxpayer's tax liability for the taxable year 1942, Section 122(d) (4) of the Internal Revenue Code, as amended in 1942, was applicable instead of its provisions as they existed in 1941 in determining whether there was a deductible net operating loss carry-over from 1941 to 1942. Although the Moore case dealt with Section 122(d) (4), while our present case deals with Section 23(g) (4), the Petitioner insists that the rationale of the two cases is the same and that the cases can not properly be distinguished, although the Tax Court in the present case attempts to so distinguish them. The Commissioner concedes in his argument in this case that the cases are not properly distinguishable, but insists that the ruling in the Moore case is erroneous and should not be followed. In any event, the Tax Court here did not follow its previous ruling in the Moore case or the ruling of the Court of Appeals affirming that judgment. The ruling of the Court of Appeals for the Fifth Circuit is advisory with us rather than controlling in our conclusion, even if the same issue was involved. Regardless of whether the same or a different issue was presented and decided in the Moore case, upon which question we find it unnecessary to make a ruling, we are of the opinion that the result reached by the Tax Court in the present case is correct.

It is contended that the taxpayer's liability for 1942, computed under the 1942 Amendment, requires the use of a formula given by the 1942 Act to compute the amount of the net operating loss for 1941,

which, however, has nothing to do with the tax liability for 1941. This result is reached by pointing out that the words in Sec. 101 of the Revenue Act of 1942 reading "shall be applicable only with respect to taxable years beginning after December 31, 1941" means the same thing as "shall be applicable only in computing a tax liability for taxable years beginning after December 31, 1941." The argument might have some merit if the words of the statute are so changed, but we are not authorized to change them, and we believe there is a substantial difference between the phrase "with respect to" as it stands in the statute and the phrase "in computing a tax liability for" as urged by Petitioner. It is true that in the present case we are not computing a tax liability for 1941, but if we make the 1942 Amendment applicable to the transaction in 1941 we are making it applicable "with respect to" a transaction in the taxable year 1941 contrary to the provisions of the amendment.

■ Petitioner also contends that under pertinent provisions of prior Revenue Acts, permitting carry-overs of net operating losses from earlier years in computing net income and taxes for a succeeding taxable year, it was expressly provided that such losses should be computed under the law in effect during the earlier period, [Section 206(e) and (f) of the Revenue Act of 1924, Section 206(e) of the Revenue Act of 1926, and Section 117(e) of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev.Acts, pages 11, 156, 525], and that there is no such provision in the Revenue Act of 1942. Such a distinction in statutory provisions is usually a useful aid in statutory construction, but the argument loses its force in the present case because of the express provisions of Section 101 of the 1942 Amendment, which as stated above, expressly provides that "Except as otherwise expressly provided," the amendments are applicable only with respect to taxable years beginning after December 31, 1941. After having put that provision in the 1942 Amendment, Congress could have given Section 23(g) (4) retroactive application by expressly providing that it should be appli-

cable to transactions in preceding years in cases where a tax liability was being computed for taxable years beginning after December 31, 1941, involving transactions in such prior years. The fact that Congress included Sec. 101 in the 1942 Amendment and provided by it that another rule would apply where it was so expressly provided, and then failed to so provide for the application of a different rule, is more convincing to us than the rule of construction urged upon us by Petitioner.

Furthermore, the net operating loss carry-over provisions of Section 122(b) (2) often would bring several taxable years into consideration. Under Petitioner's construction of Section 101 the net operating loss in any given year would not be a fixed quantity, but with changes in the taxing act would vary from year to year. Such a result argues against the proposed construction.

■ Petitioner further claims that Senate Report No. 1631, 77th Congress, Second Session, Pages 122–124 sustains its construction of the amendment. It is contended that the Report on the then pending legislation states that the carry-overs to the year 1941 from the years 1939 and 1940 would be determined in accordance with the amendments made by Section 122 of the 1942 Act. That part of the Report referred to explains the amendments made in the carry-over provisions of Section 122 of the Revenue Code. The amendment added a provision permitting net operating loss carry-backs. The Report was not dealing with Section 23(g) (4), herein involved. It was discussing both carry-overs and carry-backs under Section 122. It seems clear that a carry-back into previous years of a net operating loss in the current year would be governed by the law of the current year, which is the year in which the transactions giving rise to the loss occurred. Such is the effect of the ruling of the Tax Court in The Cambria Collieries Co. v. Commissioner, 10 T.C., p. 1172, involving a carry-back rather than a carry-over. Considered in its context and entirety, we do not believe that the Report is properly susceptible of the construction claimed by Petitioner.

Petitioner also claims that Section 29.117-7 of Regulations 111 sustains its contention. That section provides for the application of Section 117(j) (2) of the Internal Revenue Code, 26 U.S.C.A. § 117 (j) (2), added by the Revenue Act of 1942, to a transaction occurring in 1941, in computing a tax liability for 1942, notwithstanding the provisions of Section 101 of the 1942 Act that the Amendments shall be applicable only with respect to taxable years beginning after December 31, 1941. The section, however, deals with installment sales, where the taxpayer has elected to return the profit in proportionate amounts over a period of years, as allowed by Section 44 of the Code, 26 U.S.C.A. § 44. Under such circumstances, the profit received in a year subsequent to the year of sale is reported as profit for that year and has not been included in taxpayer's gross income in the year of sale. Commissioner v. South Texas Co., 333 U.S. 496, 68 S.Ct. 695. Such subsequent installment payments are properly governed by the law of the year in which received. The regulation deals with a situation entirely different from the one here involved.

Nor do we think that the decision in Forstmann v. Rogers, 3 Cir., 128 F.2d 126, first cited by Petitioner at the oral argument, supports its contention. In substance, it held that the gain or loss on a transaction which was completed in 1929 was governed by the law applicable to the taxable year 1929. Other sections of the Code referred to for the first time in Petitioner's reply brief did not have the consideration of the Tax Court and appear more technical than convincing. See Helvering v. Wood, 309 U.S. 344, 349, 60 S.Ct. 551, 84 L.Ed. 796; Helvering v. Tex-Penn Co., 300 U.S. 481, 498, 57 S.Ct. 569, 81 L.Ed. 755. We believe that the Tax Court correctly analyzed the problem when it said: "It will be borne in mind that we are here considering not a net operating loss sustained in 1942, but a deduction in the year 1942 of a claimed net operating loss sustained in 1941." There was no net operating loss in 1941 under the law applicable to that taxable year.

The judgment of the Tax Court is affirmed.