Application of Nathaniel M. MINKOFF, as Treasurer of Joint Board of Dress and Waistmakers' Union of Greater New York, an unincorporated association, Petitioner,

v.

BUDGET DRESS CORPORATION, Respondent,

To confirm the award of Harry Uviller, Esq., as Arbitrator, rendered pursuant to the terms of a collective agreement between Joint Board of Dress and Waistmakers' Union of Greater New York and The Popular Priced Dress Manufacturers' Group, Inc., dated March 1, 1955.

United States District Court
S. D. New York.
Feb. 3, 1960.

Schlesinger & Bloom, New York City, for petitioner, Emil Schlesinger, Max Bloom, New York City, of counsel.

Fellner & Rovins, New York City, for respondent, Morris J. Fellner, Leonard W. Wagman, New York City, of counsel.

DIMOCK, District Judge.

Petitioner, Treasurer of Joint Board of Dress and Waistmakers' Union of Greater New York, hereinafter the Union, moves to remand to the Supreme Court of the State of New York an application made in that court by petitioner to confirm arbitration awards. The application was removed to this court by respondent Budget Dress Corporation, hereinafter Budget Dress.

In September, 1958, the Union filed with an "Impartial Chairman" of the popular priced dress industry as arbitrator a complaint against Budget Dress.

In November 1958, Budget Dress instituted proceedings in the New York Supreme Court to stay arbitration of this complaint. The state court denied the motion for a stay and the subsequent arbitration resulted in awards to the Union. Upon petitioner's motion to confirm the awards in August 1959, Budget Dress removed the application to this court on the ground that the matter in dispute was one over which the United States District Court had original jurisdiction under the Taft-Hartley Act, 29 U.S.C. §§ 185(a), (c) and 186, 61 Stat. 156, and the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 and 2, 26 Stat. 209.

The Union says that the arbitration proceeding was not within the removable class of cases and that in any event the petition for removal by Budget Dress was too late because, under section 1446 (b) of title 28 of the U.S.C., such a petition must be filed within twenty days after the receipt of a copy of the first pleading stating a removable claim. The Union's contention as to timeliness is that the arbitration proceeding was brought when Budget Dress instituted its motion to stay arbitration in the New York Supreme Court in November, 1958, and that the time for removal expired at the end of twenty days thereafter. The petition for removal was not filed until August 7, 1959.

Budget Dress says that the arbitration proceeding was removable and that the petition for removal was timely because the proceeding removed was not the arbitration proceeding but a separate application for confirmation of the arbitration award which was not brought until August 4, 1959.

On this question of timeliness there are three possibilities: (1) that the first pleading stating a removable claim was received at the time the arbitration proceeding was brought, (2) that it was received when the stay motion was made, or (3) that it was received when the confirmation motion was made.

To determine the relative merits of the opposing arguments, I must first determine the nature of the state court proceeding.

The application for confirmation of the award was but a step in the arbitration proceeding which was a "special proceeding". Section 1459 of the New York Civil Practice Act reads as follows:

"§ 1459. *Arbitration a special proceeding.*

"Arbitration of a controversy under a contract or submission described in section fourteen hundred forty-eight shall be deemed a special proceeding, of which the court specified in the contract or submission, or if none be specified, the supreme court for the county in which one of the parties resides or is doing business, or in which the arbitration was held, shall have jurisdiction.

"Any application to the court, or a judge thereof, hereunder shall be

made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."

Section 1448 therein referred to provides that two or more persons may contract to settle by arbitration a controversy thereafter arising between them.

A contract between the Union and The Popular Priced Dress Manufacturers' Group, Inc., under which Budget Dress as a member of said Group was personally liable, provided for reference of disputes to the "Impartial Chairman" in the industry. It continued: "The decision reached * * * by the Impartial Chairman, shall have the effect of a judgment entered upon an award made, as provided by the Arbitration Laws of the State of New York, entitling the entry of judgment in a court of competent jurisdiction against the defaulting party who fails to carry out or abide by the decisions. It is hereby expressly agreed between the parties hereto that the oath of arbitrator required by Section 1455 of the Civil Practice Act and the Arbitration Laws of the State of New York, is hereby expressly waived."

 I hold that this contract permitted only such arbitration as is established by the New York Civil Practice Act and that therefore the proceeding for arbitration instituted by the Union was, under the New York law, a special proceeding in the New York Supreme Court. In passing upon removal questions, however, the federal courts decide for themselves the nature of state proceedings. Mason City & Ft. D. R. Co. v. Boynton, 204 U.S. 570, 27 S.Ct. 321, 51 L.Ed. 629. I must therefore attempt to ascertain the nature of arbitration proceedings conducted under the New York Civil Practice Act from the actual treatment given them by the New York courts rather than from the legislative declaration.

In Grand Central Theatre v. Moving Picture M. O. Union, New York Supreme Ct., 69 N.Y.S.2d 115, affirmed 263 App. Div. 989, 34 N.Y.S.2d 400, a motion was made for an extension of time to move for a stay of a pending arbitration proceeding. An extension of time to commence an action was prohibited by statute but an extension after the commencement of an action was authorized. The court held that the "action" had already been commenced and granted the motion saying, "A reading of sections 1458 and 1459, Civil Practice Act, leads to the conclusion that the motion for a stay of arbitration referred to in subdivision 2 of section 1458 does not constitute the institution of a new special proceeding. On the contrary, the application for a stay is deemed a motion in an already existing special proceeding".

In Aarons v. Local 32–E, Bronx Supreme Ct., 82 N.Y.S.2d 262, an application was made to set aside an arbitration award. It was opposed on the ground that notice had not been served on the respondent in the manner required by section 13 of the New York General Associations Law for the institution of a proceeding. The court held that the procedure appropriate to the initiation of a proceeding was not required, saying at page 265, "In submitting to arbitration, the respondent must be deemed to have put in a general appearance in a special proceeding, in which special proceeding the present application is but another step."

In Shine's Restaurant, Inc. v. Waiters and Waitresses Union, Local No. 1, New York Supreme Ct., 113 N.Y.S.2d 315, a motion was made to stay arbitration and again objection was made that notice had not been served upon the respondent in the manner required by section 13 of the General Associations Law. Here again the court rejected the contention saying at page 317, "A motion to stay arbitration is not an original special proceeding, but it is a step in an existing special proceeding, a mere practice motion therein. The service of the notice initiating the arbitration proceeding is the commencement of the special proceeding".

In Fay v. Phenix Soda Fountain Company, Kings Supreme Ct., 153 N.Y.S.2d

153, a union had served a demand for arbitration upon an employer and then had moved in court to compel arbitration. The employer objected on the ground that the affidavit in support of the motion was made by the union's attorney. The court rejected the objection, saying at page 156, "This proceeding, in any event, was initiated by the service of the demand upon the employer for arbitration and not by the service of the notice of motion and affidavit to compel arbitration".

In Matter of Adam Consolidated Industries, Inc. (Miller Bros. Hat Co.), 6 A.D.2d 515, 180 N.Y.S.2d 507, two arbitration proceedings had been initiated without any application to the court. One of the parties moved in the New York Supreme Court for consolidation and it was granted. On appeal the Appellate Division held that the court had the power to act and had properly done so.

The New York courts have thus given to an arbitration proceeding conducted pursuant to the Civil Practice Act the attributes of a judicial proceeding pending from the moment of the service of the notice of arbitration.

▬▬ No federal court has as yet gone quite so far. In Marchant v. Mead-Morrison Mfg. Co., 2 Cir., 29 F.2d 40, certiorari denied 278 U.S. 655, 49 S.Ct. 179, 73 L.Ed. 565, the court, without relying on any state doctrine that all steps in an arbitration proceeding were parts of a "special proceeding", held that everything that happened from the application to the New York Supreme Court for the appointment of an arbitrator to and including an application for confirmation of the award was all one arbitration proceeding. It was said at page 43 of 29 F.2d, "When the plaintiff applied to the state court for the appointment of the arbitrator, it was intended that the arbitrators would make their award and, when they did so, an application would be entertained by the state Supreme Court for an order confirming the award, and for judgment accordingly." The case at bar differs in that the first step inside a court was an attempt to stop the arbitration proceeding rather than to forward its progress so that the Mead-Morrison case is not authority for saying that everything that happened from the time of the application for a stay was part of a single special proceeding. To reach that result we would have to give at least partial effect to the state rule that every step in an arbitration proceeding is part of a special proceeding in court. We cannot, however, give complete effect to that state rule. Under the federal law a case is not ripe for removal unless it has been "brought" and is "pending" in a state court. 28 U.S.C. § 1441(a). It has been held that a proceeding cannot actually have been "brought" when the court in which it is supposed to be "pending" has never been mentioned in or out of the record by either of the parties or anyone else. Minkoff v. Scranton Frocks, Inc., D.C.S.D.N.Y., 172 F.Supp. 870, 876–877. After a party has gone to court, however, realism presents no such difficulty. For the period after Budget Dress had applied to the state court for a stay I can see no basis for disregarding the state law that an arbitration proceeding was pending in that court.

While I thus decide that the arbitration proceeding was "brought" at the time the motion for a stay was made the question is still open whether it was removable at that time so as to start the twenty-day period running.

▬▬ Section 1441(a) permits removal of a "civil action" only, and counsel for the Union have argued ably for the proposition that a "special proceeding" never at any time becomes a "civil action" within the meaning of section 1441(a). The law in this Circuit however, appears to be that a "special proceeding" in a New York state court brought pursuant to the New York Arbitration Law is a "civil action" within the meaning of section 1441(a). The Second Circuit in Davenport v. Procter & Gamble Manufacturing Co., 241 F.2d 511, 63 A.L.R.2d 1350, did not discuss this point but held that a "proceeding" to compel arbitra-

tion under the New York Civil Practice Act, §§ 1448–1469 was properly removed to the federal court. In Minkoff v. Scranton Frocks, Inc., D.C.S.D.N.Y., 172 F.Supp. 870, at page 876, supra, Judge Palmieri held, "Petitioner's contention that a proceeding to confirm the award of an arbitrator, under N.Y. Civil Practice Act, § 1461, is not a 'civil action' within the meaning of 28 U.S.C. § 1441 (1952) is without merit" and cited Hetherington & Berner, Inc. v. Melvin Pine & Co., 2 Cir., 256 F.2d 103, and the Davenport case. Since motions to compel arbitration and confirm awards under the New York Arbitration Law are steps in a "special proceeding", the Scranton Frocks case indicates and the Davenport case approves sub silentio the proposition that such a "special proceeding" is a "civil action" and removable to the federal court. Under these authorities the arbitration proceeding in this case at some time became a "civil action" and I have already held that it was "brought" no later than the moment when the motion to stay came before the state court. At that time it took on the attributes of a court proceeding and became a "civil action". The motion to confirm added nothing in this regard.

A "civil action" is not removable unless it is one of those cases "of which the district courts of the United States have original jurisdiction". 28 U.S.C. § 1441(a). Since it is well established that whether or not a case is within the original jurisdiction of the District Court is determined by reference to the plaintiff's claim, Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194, I must first decide who is the plaintiff for purposes of removal. The test to be applied is that laid down by Mr. Justice Holmes in Mason City & Ft. D. R. Co. v. Boynton, 204 U.S. 570, 27 S.Ct. 321, 322, 51 L.Ed. 629, supra, which was reaffirmed in Chicago, R. I. & P. R. Co. v. Stude, 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317. The Mason City case involved condemnation

proceedings growing out of the appropriation of land by a railroad for a right of way. An Iowa statute provided that either the landowner or the railroad could appeal to a state court from the assessment by commissioners of a landowner's damages from the appropriation. The statute denominated the owner plaintiff on the appeal and the railroad defendant. In that case the owner appealed to the state court and, in spite of the fact that he was denominated "plaintiff", and had himself instituted the appeal, "in due time" removed his own case to the federal circuit court on the ground of diversity of citizenship. When the case was tried on the merits there the court gave judgment for the owner and the railroad on review of that judgment in the Supreme Court raised the point that the removal was improper. Mr. Justice Holmes, speaking for the Court, said, 204 U.S. at page 579, 27 S.Ct. at page 323:

"It is said that this court is bound by the construction given to the state law by the state court. Indeed, the above § 2009 does not need construction; it enacts, in terms, that the landowner shall be plaintiff. As the right to remove a suit is given only to the defendants therein, being nonresidents of the state, it is argued that the state decision ends the case.

"But this court must construe the act of Congress regarding removal. And it is obvious that the word 'defendant' as there used is directed toward more important matters than the burden of proof or the right to open and close. It is quite conceivable that a state enactment might reverse the names which, for the purposes of removal, this court might think the proper ones to be applied."

Mr. Justice Holmes said further, 204 U.S. at page 580, 27 S.Ct. at page 324:

"Looked at as a whole, the Iowa statutes provide a process by which railroads and others may acquire land for their purposes which the

owner refuses to sell. The first step is the valuation. Whether it is part of the case or not, it is a necessary condition to the proceedings in court. Against the will of the owner the title to the land is not acquired until the case is decided and the price paid. The intent of the railroad to get the land is the mainspring of the proceedings from beginning to end, and the persistence of that intent is the condition of their effect. The state is too considerate of the rights of its citizens to take from them their land in exchange for a mere right of action. The land is not lost until the owner is paid. Therefore, in a broad sense, the railroad is the plaintiff, as the institution and continuance of the proceedings depend upon its will."

In the case at bar the "mainspring of the proceedings" is surely the Union's intent to have its complaints arbitrated and resolved in its favor, and the "institution and continuance of the proceedings depend upon its will". The Union instituted the proceeding by filing complaints with the Impartial Chairman, and, were the Union to drop its demands, the case would be at an end. The Union, therefore, as the party in control of the litigation is the plaintiff in this case.

■ Turning to the Union's, or plaintiff's, claim, it was at the outset and throughout the arbitration proceeding that Budget Dress had broken the collective agreement in effect between the parties in that Budget had dealt with non-union and non-registered contractors and had failed to make proper payments to the Health and Welfare Fund and Retirement Fund. The proceeding from the outset showed on its face that it was brought to recover for violations of a collective bargaining agreement and gave notice of a claim to which section 301(a) of the Taft-Hartley Act, 29 U.S.C. § 185(a), was applicable. That section provides:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

There is no contention that the Union does not represent "employees in an industry affecting commerce". That the proceeding was from the outset for "violation" of a collective bargaining contract seems indisputable. The only issue as to the applicability of section 301 seems to be whether the proceeding was one of the "suits" of which section 301 speaks. I can see no difference between this question and the question whether the proceeding is a "civil action", as far as this case is concerned. The proceeding may not initially have been a "suit" but it became such at the time Budget Dress brought the proceeding into court by its motion for a stay.

I have already said that the proceeding was "brought" and "pending" in the state court at the time when Budget Dress moved to stay the arbitration in the state court. Thus, all of the prerequisites to the removal of the Union's claim provided by 28 U.S.C. § 1441(a) were met when the motion for a stay was brought on.

■ Section 1446, entitled "Procedure for removal" states in subsection (b):

"(b) The petition for removal of a civil action or proceeding shall be filed within twenty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within twenty days after the service of summons upon the defendant if such

initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

"If the case stated by the initial pleading is not removable, a petition for removal may be filed within twenty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

Budget Dress claims that, since it controlled the progress of the motion for a stay, it was the plaintiff in that proceeding and that the twenty-day period did not begin to run until the making of the Union's motion to confirm the award, at which time Budget Dress became defendant. The difficulty with this argument is that the Supreme Court in Shamrock Oil & Gas Corporation v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214, made it clear that the party who is plaintiff in an action at the outset remains the plaintiff and can never remove. In that case the Court held that the defendant's interposition of a counterclaim asserting an independent cause of action which would have been removable if the plaintiff had been defendant gave the plaintiff no right of removal. When, therefore, the Union instituted the arbitration proceeding Budget Dress' position as defendant became fixed for the duration of the proceeding. Its filing of a motion for a stay no more changed it into a plaintiff than the filing of a counterclaim stating an independent cause of action changes the defendant into a plaintiff.

The twenty-day period began to run against Budget Dress when it was deemed to have received a copy of the paper first setting forth a removable claim. Such a paper may be the "initial pleading" as that term is used in 28 U.S.C. § 1446(b). Except for the fact that the word "pleading" connotes a court, the "initial pleading" in an arbitration proceeding would seem to be the complaint initiating it, at least where as here the complaint contained sufficient information to enable Budget Dress to "intelligently ascertain removability from [its] face", Ardison v. Villa, 10 Cir., 248 F.2d 226, 227. Since, however, the arbitration proceeding was not a "civil action" pending in a state court at the time of the filing of the complaint with the Impartial Chairman, the complaint did not qualify as an "initial pleading" at that time. It did, however, become the "initial pleading" when the "civil action" was "brought". In contemplation of law that complaint as a pleading was received by Budget Dress at the instant when Budget Dress brought the "civil action" by moving for a stay. The complaint, at the time it became the "initial pleading", stated a removable case.

Budget Dress, as defendant in a "civil action" which it itself brought, like the landowner in the Mason City case, was entitled to remove the "civil action" to the federal court. Since the motion to stay arbitration by which the "civil action" was brought was made in November 1958 and Budget Dress' petition for removal was not filed until August 7, 1959, I find that the petition came too late.

Motion to remand is granted.

So ordered.