In the Matter of the Arbitration of Certain Differences Between **LUMMUS COMPANY,** Petitioner, and **COMMONWEALTH OIL REFINING COMPANY,** Inc., Respondent.

United States District Court
S. D. New York.
June 2, 1961.

Cahill, Gordon, Reindel & Ohl, New York City, for petitioner. Lawrence J. McKay, Raymond L. Falls, Jr., Thomas F. Curnin, New York City, of counsel.

Sullivan & Cromwell, New York City, for respondent. Richard deY. Manning, Milton Pollack, New York City, Ruben Rodriguez-Antongiorgi, San Juan, P. R., John F. Dooling, Jr., Hamilton F. Pot+er, Jr., Jeffrey A. Fillman, New York City, of counsel.

WEINFELD, District Judge.

This proceeding was originated in the Supreme Court of the State of New York by The Lummus Company to compel Commonwealth Oil Refining Company, Inc. to arbitrate disputes arising out of two contracts entered into between them, each of which contained an arbitration clause.

Lummus now moves to remand the proceeding to the State Court,[1] from which it had been removed to this Court on the petition of Commonwealth, which alleged diversity of citizenship,[2] based upon the fact that Lummus is a Delaware corporation, with its principal place of business in the State of New York, and Commonwealth is a corporation organized under the laws of, and with its principal place of business in, the Commonwealth of Puerto Rico.

The principal basis for the motion to remand is a lack of diversity jurisdiction, although Lummus relies upon other grounds which will be considered separately.[3]

I

Lummus' basic contention is that this Court, as an Article III court, is without jurisdiction because Commonwealth is a citizen of the "Commonwealth of Puerto Rico," which is not a state within the meaning of Article III, section 2, of the Constitution, which specifies that the judicial power of the United States extends "to Controversies * * * between Citizens of different States * * *." Further, and as a corollary

---

1. 28 U.S.C. § 1447(c).

2. 28 U.S.C. § 1332.

3. The controversy between the parties has already been the subject of much litigation. Following the petitioner's service of demand for arbitration, the respondent filed an action in the United States District Court for the District of Puerto Rico for rescission of the two contracts and there moved for a stay of the arbitration. Thereafter, the instant proceeding was commenced in the State Court and subsequently removed to this Court on respondent's petition. However, the District Court of Puerto Rico stayed all proceedings herein in futherance of the arbitration, D.C.D.P.R. 1959, 174 F.Supp. 485; D.C.D.P.R.1959, 175 F.Supp. 873, but upon appeal these orders were reversed. 1 Cir., 280 F.2d 915, certiorari denied, 1960, 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 225. Thereupon, petitioner made the present motion to remand.

contention, it urges that section 1332(d) of Title 28, which defines "states" for purposes of diversity jurisdiction to include the "Commonwealth of Puerto Rico" and "territories" was beyond the constitutional competence of Congress.

In essence, the petitioner presses for adherence to the strict definition of the word "state," adopted by Chief Justice Marshall in Hepburn and Dundas v. Ellzey,[4] which held that the District of Columbia is not a state and its citizens are not citizens of any state within the meaning of Article III, section 2, and of the Judiciary Act of 1789 [5]—a holding [6] that remains law despite National Mutual Insurance Co. of District of Columbia v. Tidewater Transfer Co.,[7] decided 144 years later. · The ruling in Tidewater finally opened the federal courts to citizens of the District of Columbia in suits where diversity existed; however, it did so, not under Article III, but by reason of the exclusive and plenary power of Congress to legislate for the District of Columbia under Article I, section 8, clauses 17 and 18. This rationale reflected the views of only three Justices. Two other Justices made up the necessary five-man majority by concurring in the Court's judgment, but they voted to overrule Hepburn and to hold that the District of Columbia is a "state" within

Article III, section 2. Accordingly, the Supreme Court upheld the constitutionality of then section 41(1) of 28 U.S.C., as amended in 1940,[8] insofar as it vested jurisdiction in the district courts in actions "between citizens * * * of the District of Columbia * * * and any State * * *." [9]

Lummus maintains that the Tidewater ruling only considered the issue with respect to citizens of the District of Columbia and urges that it be so limited. Specifically, it contends that by whatever route the Court reached a judgment in that case, it is inapplicable to citizens of territories; also, and in any event, that its scope cannot be extended to citizens of the Commonwealth of Puerto Rico since it is not a territory as that term is used in the Constitution.

One Court of Appeals has considered and rejected the initial contention advanced by petitioner,[10] and another has. reached a like conclusion as to both.[11] Petitioner urges upon this Court rejection of these rulings, since, having been decided by other circuits, they are not necessarily binding, although entitled to great respect.[12]

Siegmund v. General Commodities Corp.[13] was decided within eight days after the Supreme Court ruling in the Tidewater case. In the face of a similar

---

4.  1805, 2 Cranch 445, 6 U.S. 445, 2 L.Ed. 332.

5.  The Act created a system of federal courts and vested them with jurisdiction of suits "between a citizen of the State where the suit is brought, and a citizen of another State." 1 Stat. 73, 78.

6.  The same construction was soon applied to citizens of territories of the United States. Corporation of New Orleans v. Winter, 1816, 1 Wheat. 91, 14 U.S. 91, 4 L.Ed. 44.

7.  1949, 337 U.S. 582, 69 S.Ct. 1173, 93 L. Ed. 1556.

8.  54 Stat. 143.

9.  This was the first relevant change in 135 years since the original diversity section of the Judiciary Act of 1789 was passed upon in Hepburn and Dundas v. Ellzey, 1805, 2 Cranch 445, 6 U.S. 445, 2 L.Ed. 332. The Act was later re-enacted in

substance as part of the Judicial Code, 28 U.S.C. § 1332.

10.  Siegmund v. General Commodities Corp., 9 Cir., 1949, 175 F.2d 952.

11.  Detres v. Lions Bldg. Corp., 7 Cir., 1956, 234 F.2d 596.

12.  See Regla Coal Co. v. Bowers, D.C.S.D. N.Y.1929, 37 F.2d 373, 375, affirmed sub nom., Daniel Reeves, Inc. v. Anderson, 2 Cir., 1930, 43 F.2d 679, affirmed Graham v. Goodcell, 1931, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415. Cf. Sokol Bros. Furniture Co. v. Commissioner, 5 Cir., 1950, 185 F.2d 222, certiorari denied 1951, 340 U.S. 952, 71 S.Ct. 571, 95 L.Ed. 686; Reo Motors, Inc. v. Commissioner, 6 Cir., 1948, 170 F.2d 1001, affirmed 1950, 338 U.S. 442, 70 S.Ct. 283, 94 L.Ed. 245.

13.  9 Cir., 1949, 175 F.2d 952.

constitutional attack upon the same diversity statute insofar as it gave citizens of a territory access to federal district courts, the Court of Appeals held that the Tidewater ruling controlled and that diversity jurisdiction extended to an action between a citizen of the Territory of Hawaii and a citizen of a state. The Court observed that "the reasons assigned by the two groups of Justices who concurred in the [Tidewater] result are as applicable to cases involving citizens of territories as they are to cases in which citizens of the District of Columbia are parties." [14] The Court readily acknowledged that the power of Congress to legislate for the territory was not as expressly stated as its power over the District of Columbia; nonetheless it found that the diversity statute in question was a legitimate exercise of the power to legislate for the territories under Article IV, section 3, of the Constitution, which provides that "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."

The Court is persuaded that the Siegmund conclusion that the Tidewater holding is equally applicable in the instance of territories is sound.

Lummus next urges that even if it be assumed that Siegmund was correctly decided, it is inapplicable to the issue here presented. It contends that Puerto Rico is not a territory—that its status as a commonwealth is different and entirely distinct from the status of Hawaii, then a territory, or from any other territory of the United States. However, the precise contention (for diversity purposes) was considered and rejected in Detres v. Lions Bldg. Corp. [15] There, the Court of Appeals for the Seventh Circuit, after an extensive review of the status of Puerto Rico from the time it was ceded to the United States by Spain in 1898, 30 Stat. 1755, through the legislative history of the Act [16] and events thereafter [17] by reason of which Puerto Rico became a commonwealth in the federal system, [18] found that although the new constitution vested in the Puerto Rican people broader local powers than they had previously enjoyed, "Puerto Rico both before and after the adoption and approval of its constitution was a territory of the United States within the meaning of the diversity section of the federal code of civil procedure." [19]

Strong support is found for this conclusion in the legislative history of the Act which led to the creation of the Commonwealth. The House Committee Report, which recommended its adoption, stated in "absolutely clear" terms that "the bill under consideration would not change Puerto Rico's fundamental political, social, and economic relationship to the United States." [20]

Significantly, congressional action, in the wake of the Detres decision, gives legislative approval of its holding. When the Court of Appeals decided that case, the diversity section contained no specific reference to the Commonwealth of Puerto Rico. [21] However, thereafter Con-

14. Id. 175 F.2d at page 953.

15. 7 Cir., 1956, 234 F.2d 596.

16. Pub.Law 600, 48 U.S.C.A. §§ 731b–731e, approved July 3, 1950.

17. The Puerto Rican constitution, 48 U.S.C.A. § 731d note, was approved by Congress July 3, 1952, 66 Stat. 327, and proclaimed in force by the Governor of Puerto Rico on July 25, 1952.

18. For a discussion of the Commonwealth status and its characteristics, see Magruder, The Commonwealth Status of Puerto Rico, 15 U.Pitt.L.Rev. 1 (1953); Moreno Rios v. United States, 1 Cir., 1958, 256 F.2d 68, 71; Figueroa v. People of Puerto Rico, 1 Cir., 1956, 232 F.2d 615; Mora v. Mejias, 1 Cir., 1953, 206 F.2d 377; Arbona v. Kenton, D.C.S.D.N.Y. 1954, 126 F.Supp. 366.

19. Detres v. Lions Bldg. Corp., 7 Cir., 1956, 234 F.2d 596, 600.

20. H.R.Rep. No. 2275, 81st Cong., 2d Sess. (1950), in 2 U.S.Code Cong.Serv. p. 2682 (1950).

21. Section 1332 of Title 28 then provided: "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds

gress amended the section to include the Commonwealth of Puerto Rico within the meaning of the word "states" as used therein.[22] The Senate Committee Report accompanying the amendment, in referring to the Detres case, stated:

"The Seventh Circuit Court of Appeals held that even though the 1952 constitution refers to the 'Commonwealth of Puerto Rico,' at the same time it is within the meaning of the term 'Territory' in section 1332. The court indicates that there was no intention on the part of Congress to affect the status of Puerto Rico as far as the application of section 1332 was concerned when the new constitution was authorized. To remove any doubts, the House Judiciary Committee favorably reports H. R. 9038 to expressly include the Commonwealth of Puerto Rico in the coverage of section 1332 of title 28 of the United States Code." [23]

Thus, there was an express manifestation of congressional purpose to accept the holding of the Detres case that Puerto Rico was a territory.

The record compels the conclusion that despite changes in its internal structure and the nomenclature used to designate it for diversity purposes, Puerto Rico's status as a territory was unaffected. Consequently, Congress, in enacting section 1332(d) to include the Commonwealth of Puerto Rico, acted within its constitutional power under Article IV, section 3, clause 2, to make "all needful Rules and Regulations respecting the Territory * * * belonging to the United States."

## II

▇▇▇ Lummus next attacks the removal of the arbitration proceeding to this Court based upon an alleged lack of

power of the federal courts to apply what it refers to as the "peculiar" remedy created by the New York State Arbitration Law for the enforcement of agreements to arbitrate.

This proceeding, as already noted, was commenced by Lummus in the Supreme Court of the State of New York by a motion to compel Commonwealth to arbitrate disputes which had arisen between them under their contracts. The motion, supported by a petition, was made pursuant to section 1450 of the New York Civil Practice Act, one of the provisions of the Arbitration Law, which in general sets up the procedure and means whereby enforcement of an arbitration agreement is secured. It provides that upon notice to the defaulting party, and absent an issue as to the existence of the contract, the Court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the contract * * *." In end result, the Court directs specific performance of the agreement to arbitrate.

It is this provision which Lummus brands as a "peculiar" remedy adapted to the state courts and only available in those courts. Lummus concedes, as indeed it must, that section 1448 of the Civil Practice Act, which provides that arbitration agreements "shall be valid, enforceable and irrevocable," establishes a substantive rule and that federal courts must recognize the substantive right so created. But it challenges the power of the federal courts to enforce this right, in diversity cases, by the application of section 1450. In sum, it contends that section 1450, by authorizing an order, which in effect compels specific performance of agreements to arbitrate, creates an equitable remedy unavailable at common law and one previously unknown in the federal courts; hence, the federal courts may not give effect to the newly

the sum or value of $3,000 * * * and is between: (1) citizens of different States * * *.
"(b) The word 'States', as used in this section, includes the Territories and the District of Columbia." 62 Stat. 930.

22. 28 U.S.C. § 1332.

23. S.Rep. No. 2605, 84th Cong., 2d Sess. ··· · ′ ··· (1956), in 2 U.S.Cong. and Adm.News, p. 3558 (1956).

52

created State remedy to enforce the substantive right. Thus, it maintains that there is a sharp dichotomy under the State Act between substance and procedure, concluding that the motion to compel is "procedural"; that as a new "remedial right" not previously enforced in the federal courts, it may not be used to enlarge their jurisdiction; consequently, the proceeding was not removable in the first instance.[24]

Should the equitable remedy, tested by Erie R. R. Co. v. Tompkins criteria, be deemed of substantive effect, petitioner's contention fails, since this Court would be bound to recognize and apply the State law.[25] Therefore, the fundamental question is whether the motion to compel arbitration under the State Act is substantive or procedural as those terms are defined by the federal courts under Erie.

In the determination of that issue, it is well to recall that in adjudicating a state-created right in diversity cases, a federal court is "in effect, only another court of the State"[26] and may not "substantially affect the enforcement of the right as given by the State."[27] The essential inquiry is whether it would "significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court."[28] And in deciding this issue, the delineation of the statute by the State Court, as either substantive or procedural, is immaterial.[29]

The New York State Arbitration Law came into being largely as a result of widespread dissatisfaction with existing law as to arbitration agreements.[30] As the New York State Court of Appeals observed, such agreements meant little and were easily violated;[31] they were revocable before final submission of a dispute to the arbitrator.[32] While the

24. In support of its position, it relies principally upon Pusey & Jones Co. v. Hanssen, 1923, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763, and other cases of pre-Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, vintage. In Pusey, the Supreme Court remanded a case to the State Court on the ground that, absent the entry of judgment upon an unsecured simple contract creditor's claim and return of execution unsatisfied, a federal equity court was without power to appoint a receiver, despite the fact that the state law governing the case provided for such appointment. The Court held that the appointment of the receiver "determines no substantive right, nor is it a step in the determination of such a right" and consequently the right to proceed in a federal court sitting in equity could not be enlarged by the state act. Id. 261 U.S. at page 497, 43 S.Ct. at page 456. However, the Court pointed out that had the state act created a new substantive right, it could have been enforced.
Moreover, since Erie R. R. Co. v. Tompkins, the continuing vitality of Pusey has been questioned by this and other circuits. See Mintzer v. Arthur L. Wright & Co., 3 Cir., 1959, 263 F.2d 823, 825; Pasos v. Pan American Airways, 2 Cir., 1956, 229 F.2d 271.

25. Bernhardt v. Polygraphic Co., 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199;

Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

26. Guaranty Trust Co. of New York v. York, supra note 25, 326 U.S. at page 108, 65 S.Ct. at page 1469.

27. Id. 326 U.S. at page 109, 65 S.Ct. at page 1470.

28. Ibid.

29. Ibid; Franke v. Wiltschek, 2 Cir., 1953, 209 F.2d 493, 497. See, e. g., Berkovitz v. Arbib & Houlberg, Inc., 1921, 230 N.Y. 261, 270, 130 N.E. 288, 290.

30. See Cohen, The Law of Commercial Arbitration and the New York Statute, 31 Yale L.J. 147 (1921).

31. Matter of Feuer Transp. Inc., 1946, 295 N.Y. 87, 91, 65 N.E.2d 178, 180. See Berkovitz v. Arbib & Houlberg, Inc., 1921, 230 N.Y. 261, 276, 130 N.E. 288, 292.

32. People ex rel. Union Ins. Co. v. Nash, 1888, 111 N.Y. 310, 18 N.E. 630, 2 L.R.A. 180.

courts recognized such agreements, recovery in the event of a breach was limited to damages;[33] specific performance of the promise to arbitrate was unavailable and the promise could not be pleaded in bar of an action.[34]

The Arbitration Law abrogated the old rule.[35] It gave life and vigor to such agreements. It not only reaffirms their validity, but further declares them to be "enforceable and irrevocable." Instead of limiting parties, in the event of a breach, to an ineffectual action at law for damages, it gives them the right to compel specific performance of the promise to arbitrate matters within the scope of the agreement, and also provides for the entry of judgment upon any award rendered in the arbitration.[36] The legislative action which supplanted the old and ineffectual rule, which limited relief to a damage claim, did more than supply a procedure—it granted a right of substance[37]—the right to compel a party to live up to his promise to arbitrate. In this circumstance, for the federal courts to deny effect to section 1450 would "substantially affect the enforcement of the right as given by the State."[38] Indeed, such a denial would be destructive of the right itself. Under Erie, the equitable remedy granted under section 1450 is clearly substantive. The right and the remedy are so intertwined that to deny one is to deny the other.

In Bernhardt v. Polygraphic Co.,[39] the Supreme Court held that in diversity cases the validity and enforceability of arbitration agreements are governed by the law of the state in which the district court sits. Lummus urges that Bernhardt only recognized that the right to arbitration was one of substance and enforceable to the extent permitted by state law, but did not decide the issue as to whether a federal court can or should apply the "peculiar" remedy created by a particular state statute for the enforcement of arbitration agreements. However, to acknowledge, as Lummus does, that the right to arbitration is one of substance, but to deny its enforcement in the federal courts on the ground that the remedy is peculiarly adapted to the state courts, would indeed exalt form over substance and render the right meaningless. As the Supreme Court observed in Bernhardt, "[T]he *remedy* by arbitration, whatever its merits or shortcomings, substantially affects the cause of action created by the State."[40]

Lummus next suggests that many difficult, if not "insuperable," procedural problems would flow were the federal courts to enforce arbitration as provided for in section 1450, and urges that this furnishes a "practical" additional reason for nonremoval of state arbitration proceedings on the basis of diversity. The difficult problems envisioned by petitioner are not specified, with but one exception—and this rather vaguely. It centers about Rule 81(a) (3) of the Federal Rules of Civil Procedure, 28 U.S.C.,

33. Haggart v. Morgan, 1851, 5 N.Y. 422, 427.

34. Seward v. City of Rochester, 1888, 109 N.Y. 164, 16 N.E. 348; Haggart v. Morgan, supra note 33. Cf. Thomas W. Finucane Co. v. Board of Education, 1907, 190 N.Y. 76, 82 N.E. 737. In an effort to avoid the rigor of the existing rule, which brought forth judicial criticism, courts evolved exceptions. See President, Managers & Co. of the Delaware and Hudson Canal Co. v. Pennsylvania Coal Co., 1872, 50 N.Y. 250.

35. See Berkovitz v. Arbib & Houlberg, Inc., 1921, 230 N.Y. 261, 269, 130 N.E. 288, 289.

36. New York Civil Practice Act, §§ 1461, 1464.

37. Cf. Guardian Savings & Trust Co. v. Road Improvement District No. 7, 1925, 267 U.S. 1, 6–7, 45 S.Ct. 201, 69 L.Ed. 487.

38. Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079.

39. 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199.

40. Bernhardt v. Polygraphic Co., supra note 39, 350 U.S. at page 203, 76 S.Ct. at page 276. (Emphasis supplied.)

which provides that the Rules apply in arbitration matters "only to the extent that matters of procedure are not provided for" in the United States Arbitration Act.[41] Since there is no similar special provision for removed state cases, Lummus argues that a state proceeding initiated by a motion to compel arbitration, as is the case here, is incompatible with the plenary procedure by complaint and answer under the Federal Rules. This contention is purely hypothetical since the instant proceeding was commenced by Lummus in the State Court in accordance with the procedure under the New York Arbitration Law and was removed here only after it was so commenced.[42]

◼◼ Moreover, as to the proceeding itself, suffice it to say that enforcement of an arbitration agreement is in the nature of an action for specific performance, which certainly is no innovation— the power to compel one to adhere to his commitments where the remedy at law is inadequate is as old as the chancery courts.[43]

In addition, the United States Arbitration Act parallels the State Act and the federal courts have decided legions of cases thereunder without difficulty. This Court has pointed out [44] that section 1450 of the New York Act is substantially similar to section 4 of the federal Act. The procedure under the two Acts is also alike. The significant motions are those

to stay an action brought in violation of an arbitration agreement, a motion to compel its performance and a motion to confirm, vacate or modify an award.

It is rather late in the day of the continuing development of arbitration law to suggest that federal courts cannot attune their procedure and practices to a state provision for the enforcement of the right to arbitrate.[45]

### III

◼ Lummus' further plea for remand rests upon its claim that a proceeding to compel arbitration pursuant to the State statute is not a "civil action" within the meaning of the removal section, 28 U.S.C. § 1441(a). The matter has been decided adversely to its contention, both directly and sub silentio, in a number of cases in this district and circuit. In Davenport v. Proctor & Gamble Mfg. Co.,[46] the Court of Appeals held that a proceeding to compel arbitration under the New York Act was properly removed to this Court. Although the principal discussion centered about the question of the amount in controversy, the Court necessarily concluded that the arbitration proceeding was a "civil action" under section 1441(a) and as such was removable to this Court.

Also, in Minkoff v. Budget Dress Corp.,[47] and Minkoff v. Scranton Frocks, Inc.,[48] respectively, petitioner's plea that a motion to confirm an arbitrator's award

---

41. 9 U.S.C. § 1 et seq.

42. Consequently, the question of the appropriate method to initiate a proceeding in the federal court, based solely on diversity, need not be considered.

43. Despite the repeated references to the "peculiar" remedy of specific enforcement of arbitration agreements, it was not entirely unknown to the federal courts. Cf. Red Cross Line v. Atlantic Fruit Co., 1924, 264 U.S. 109, 121–22, 44 S.Ct. 274, 68 L.Ed. 582; Heckers v. Fowler, 1864, 2 Wall. 123, 69 U.S. 123, 17 L.Ed. 759.

44. Application of Reconstruction Finance Corp., D.C.S.D.N.Y.1952, 106 F.Supp. 358, 361, R. F. C. v. Harrison & Crosfield, affirmed 2 Cir., 1953, 204 F.2d 366.

45. See Bernhardt v. Polygraphic Co., 1956, 350 U.S. 198, 202–203, 76 S.Ct. 273, 100 L.Ed. 199; Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079.

46. 2 Cir., 1957, 241 F.2d 511, 63 A.L.R. 2d 1350.

47. D.C.S.D.N.Y.1960, 180 F.Supp. 818.

48. D.C.S.D.N.Y.1959, 172 F.Supp. 870.

under the New York statute was not removable because it was not a "civil action" within the meaning of the removal section, was held to be without merit. Since a motion to compel arbitration and a motion to confirm an award are both special proceedings under the same Act, there is no substance to Lummus' attempt to distinguish the two district court holdings.

Equally without force is its effort to deny the applicability of Hetherington & Berner, Inc. v. Melvin Pine & Co.,[49] which related to a petition to vacate an arbitration award filed in the State Court, and removed to this Court, where it was considered together with a motion to confirm the same award made in an action originally commenced here. The district court denied the motion to vacate and granted the motion to confirm. On appeal, the contention that the State Court proceeding to vacate the award was not a "civil action" and hence not removable to the federal court was expressly presented and rejected as being without merit.[50]

In sum, the Court concludes that Lummus' proceeding to compel Commonwealth to arbitrate under the terms of their agreements was removable to this Court.

## IV

Petitioner's final effort to remand is based upon the alleged failure of Commonwealth to file its petition for removal within twenty days after receipt of the "initial pleading," as required by 28 U.S.C. § 1446(b).

On April 29, 1959, Lummus mailed its demand for arbitration, which was received by Commonwealth on April 30th. On May 20th Lummus served upon the Secretary of State of New York a notice of motion, accompanied by a petition to compel arbitration, returnable in the Supreme Court of the State of New York. On May 25th Commonwealth filed its removal petition. Obviously, if the notice of motion constituted the initial pleading, the removal was timely. But Lummus contends that its demand of April 29th was the initial pleading which started the time running against removal.

This demand was simply a formal notice to Commonwealth to comply with its agreement to arbitrate—and invoked the machinery and rules of the American Arbitration Association as specified in the agreement. This cannot be classified as an initial pleading before a judicial tribunal. It neither designated nor suggested a court before which the matter was to be presented in the event of noncompliance with the demand for arbitration. To constitute a proceeding, the intervention of a court is required.

The notice of motion to compel arbitration returnable before the Supreme Court of the State of New York, and served when it was apparent that Commonwealth would not comply with the Lummus demand, constituted, for removal purposes, the initial pleading; accordingly, the removal was timely under section 1446(b).[51]

The motion to remand is denied in all respects.

---

49. 2 Cir., 1958, 256 F.2d 103.

50. Petitioner's assertion that the issue was not presented to nor considered by the Court of Appeals is incorrect. See Record on Appeal, Docket No. 24803–04, Brief for Appellant, Point II (2d Cir. 1958).

51. See Minkoff v. Budget Dress Corp., D.C.S.D.N.Y.1960, 180 F.Supp. 818;

Minkoff v. Scranton Frocks, Inc., D.C.S.D.N.Y.1959, 172 F.Supp. 870. See also Matter of Children's Dress, Infant's Wear, Housedress and Bathrobe Makers' Union, D.C.S.D.N.Y.1960, 183 F.Supp. 671. Cf. Lummus Co. v. Commonwealth Oil Co., D.C.D.P.R.1959, 174 F.Supp. 485, 487, reversed on other grounds, 1 Cir., 280 F.2d 915, certiorari denied, 1960, 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed. 2d 225.