**BUDGET DRESS CORP., Plaintiff,**

v.

**JOINT BOARD OF DRESS AND WAIST-MAKERS' UNION OF GREATER NEW YORK and its Constituent Locals, and Charles S. Zimmerman, Nathanial M. Minkoff, and Leon Namenwirth, individually, and as General Manager, Secretary-Treasurer, and President, respectively, of the Joint Board of Dress and Waistmakers' Union of Greater New York; The International Ladies' Garment Workers' Union, AFL–CIO; and The Popular Priced Dress Manufacturers' Group, Inc., Defendants.**

United States District Court
S. D. New York.
Nov. 20, 1959.

Fellner & Rovins, New York City, for plaintiff (Morris J. Fellner and Leonard W. Wagman, New York City, of counsel).

Schlesinger & Bloom, New York City, for defendants Joint Board of Dress and Waistmakers' Union, Zimmerman, Minkoff and Namenwirth (Emil Schlesinger and Max Bloom, New York City, of counsel).

Morris P. Glushien, New York City, for defendant International Ladies' Garment Workers' Union.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant

Popular Priced Dress Manufacturers' Group, Inc. (Charles Ballon, Eugene Kline and Raoul Gersten, New York City, of counsel).

RYAN, Chief Judge.

Plaintiff seeks to stay the enforcement of the collection of a money judgment, entered in the Supreme Court of the State of New York, County of New York, which confirmed an award in arbitration rendered against the plaintiff by Harry Uviller, Esquire, Impartial Chairman of the Dress Industry.

Plaintiff moves specifically for an injunction pendente lite pursuant to Section 186(e) of Title 29 United States Code Annotated (Section 302(e) of the Labor Management Relations Act of 1947), staying the defendants from receiving, accepting or demanding any monies or any things of value from the plaintiff or its surety upon a supersedeas bond posted by it and staying that surety, the Public Service Mutual Insurance Company, from making such payment. Plaintiff contends that such demand is rendered unlawful by Section 186(b) of Title 29 of the United States Code Annotated (Section 302(b) of the Labor Management Relations Act) and that such payment would be in violation of Section 186(a) thereof.

So that we may properly appreciate and consider this motion, it is necessary for us to first examine and review the events which culminated in the entry of this State court judgment.

Plaintiff is a jobber [1] in the dress industry and was a member of the defendant Popular Priced Dress Manufacturers' Group, Inc. (hereinafter referred to as "Group") from January, 1937 to January, 1958. One of the functions of Group is to bargain collectively on behalf of its members with the Inter-national Ladies' Garment Workers Union (hereinafter referred to as "International") and the Joint Board of Dress and Waistmakers' Union of Greater New York (hereinafter referred to as "Joint Board"), defendants in this action.

Such collective agreements have been entered into among these parties since 1936. Plaintiff had been bound by each of these agreements from the date it became a member of Group until and including January 31, 1958.

By collective agreement, dated March 25, 1944, entered into by International and Joint Board with Group, a health fund (later expanded into a health and welfare fund) was created. By another collective agreement of these parties, dated March 29, 1947, a retirement fund was created. Each of these funds has been continued by subsequent collective agreements. The last such agreement by which plaintiff was bound was dated March 1, 1955 and expired on January 31, 1958.

Under the provisions of the collective agreements, the funds were financed solely by contributions made by employers, "such payments to be computed, reported and made in the manner to be promulgated by Harry Uviller, Esq., as Impartial Chairman, which promulgation, when made, shall be deemed incorporated herein, made part hereof, and binding upon each member of the Association (Group)." Pursuant to this provision, various promulgations were made by the Impartial Chairman, requiring that payments be made to the funds based upon a stipulated percentage of total payments made by members of Group to their contractors.

Joint Board alleged that in the latter part of 1956, it discovered that plaintiff was violating the collective agreements by having its garments made up in the

_____

1. "Jobber" is defined on page 2 of the existing collective agreement as "one who does not produce garments in his own factory but has them made by contractors as herein defined, and who may or may not employ cutters and/or samplemakers." An excellent exposition of the development and role of the jobber in the garment industry may be found in the recent opinion of Weinfeld, J., in Greenstein & Good v. National Skirt & Sportswear Association, Inc., D.C.S.D. N.Y., 178 F.Supp. 681.

shops of non-union contractors and by failing to pay to the funds the payments required to be made under the promulgations of the Impartial Chairman. The collective agreements provided that Joint Board could examine plaintiff's books and records. However, plaintiff refused to permit Joint Board to do so.

Subsequently, Joint Board filed a complaint against plaintiff under the arbitration clause of the collective agreements, which resulted in an award directing plaintiff to submit its books and records for examination by a representative of Joint Board.

Plaintiff refused to comply with the award and Joint Board moved for its confirmation in the Supreme Court of the State of New York. Plaintiff cross-moved to vacate the award, alleging, *inter alia,* that the collective agreements violated the Sherman Act, 15 U.S.C.A. §§ 1-7, 15 note.

By judgment dated May 10, 1957, the award was confirmed and the cross-motion to vacate was denied. Plaintiff then appealed to the Appellate Division of the Supreme Court, First Department, and moved in that Court for a stay of the examination of its books and records pending determination of its appeal. When the Appellate Division denied the plaintiff's motion, 8 A.D.2d 695, 188 N.Y.S.2d 929, it abandoned its appeal and submitted its books and records for examination.

Following this examination, Joint Board filed four complaints against plaintiff, three of which charged it with failing to make payments aggregating $74,548.22, which Joint Board alleged was due to the funds, and one of which charged the plaintiff with violating the collective agreements by having its garments made up in the shops of non-union contractors.

While the hearings were still in progress, plaintiff and Joint Board entered into two separate stipulations. One dealt with the three complaints charging plaintiff with failing to make proper payments to the funds and recognized the

jurisdiction of the Impartial Chairman in the premises, and authorized him to render an award in connection therewith. The second stipulation fixed damages of $5,000 to be paid by plaintiff to Joint Board for violations by plaintiff of the collective agreement in having its garments made up in the shops of non-union contractors, and authorized the Impartial Chairman to render an award requiring plaintiff to cease and desist from violating the collective agreement in the respects therein specified.

Pursuant to these two stipulations, the Impartial Chairman rendered two awards. One found that plaintiff was indebted to the funds in the sum of $49,000 and directed an immediate payment of $20,000 be made by plaintiff to the funds; that $24,000 be paid in equal monthly installments, and that, if all these payments were properly made, the balance of $5,000 would be forgiven. Plaintiff has made all of these payments and this suit has been brought to recover all or part of these payments.

The other award, which required plaintiff to cease and desist from violating the collective agreements was confirmed by the Supreme Court of the State of New York, and on October 28, 1957, that Court entered a judgment and decree enjoining plaintiff from violating the collective agreement.

Joint Board thereafter alleged that a subsequent examination of plaintiff's books and records, conducted after the expiration of the collective agreements but limited to the period of this examination, disclosed that despite the injunction plaintiff had continued to violate the collective agreement by failing to make payments due to the funds and by continuing to have its garments made up in the shops of non-union contractors. Joint Board then filed three additional complaints against plaintiff. One charged plaintiff with failing to pay the sum of $18,535.21 to the funds. This complaint was heard by the Impartial Chairman. On September 30, 1958, he rendered his award, directing plaintiff to

pay to the funds the sum of $17,480.97, which he found to be due.

Joint Board then moved in the Supreme Court of the State of New York to confirm this award. Plaintiff cross-moved to vacate it and set it aside, again alleging, *inter alia*, that the collective agreement violated the Sherman Act. At the same time it moved, in the same Court, to stay the arbitration of the other two complaints. On April 6, 1959, that Court made a final order denying the motion to stay arbitration. On April 16, 1959, the Court rendered further judgment confirming the award and directed plaintiff to pay to Joint Board, for the benefit of the funds, the amount of the award, $17,480.97, with interest thereon of $553.56, amounting in all to, $18,034.53. This judgment was entered in the New York County Clerk's office on April 17, 1959.

Plaintiff thereupon appealed to the Appellate Division of the Supreme Court both from the judgment of $18,034 in favor of Joint Board for the benefit of the funds, and from the final order denying its application to stay arbitration. To stay execution of the judgment, it filed the requisite supersedeas bond. It also moved in the Appellate Division for a stay pending determination of the appeal. That motion was denied by order of the Appellate Division dated May 1, 1959. Arbitration of the two remaining complaints followed. Awards were rendered by the Impartial Chairman and Joint Board moved in the Supreme Court of the State of New York to confirm these awards. This proceeding to confirm was removed to this Court by plaintiff. Joint Board has moved to remand this proceeding.

Plaintiff did nothing to perfect its appeals to the Appellate Division from the judgment of $18,034.53 and from the final order denying its motion to stay arbitration. Accordingly, on August 11, 1959, Joint Board notified plaintiff that unless its appeals were perfected and brought on for argument for September 8, 1959, Joint Board would move to dis-

miss the appeals. Upon plaintiff's continued failure to prosecute these appeals, Joint Board moved to dismiss, and the Appellate Division on September 15, 1959 dismissed plaintiff's appeal from the final order denying its application to stay arbitration, and on September 17, 1959, it dismissed plaintiff's appeal from the judgment in favor of Joint Board for the benefit of the funds, in the sum of $18,034.53. Joint Board thereupon made demand upon the surety for payment. It is the enforcement of the collection of this judgment which plaintiff seeks to stay.

■■ A Court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments (28 U.S.C. § 2283). The fact that, if plaintiff is successful here under a federally created right, it may recover, as part of its damages, the amounts which it may be required to pay to defendants under this State court judgment, does not justify this Court in staying enforcement. Bascom Launder Corporation v. Telecoin Corporation, D.C.S.D.N.Y.1950, 9 F.R.D. 677, at page 678. Where a supersedeas bond is involved, "(t)hat the injunction was a restraint of the parties and was not formally directed against the state court itself is immaterial." Mr. Justice Frankfurter, speaking for the Court in Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 309 U.S. 4, at page 9, 60 S.Ct. 215, at pages 217, 218, 84 L.Ed. 537; accord: Hill v. Martin, 296 U.S. 393, at page 403, 56 S. Ct. 278, 80 L.Ed. 293; International Union, etc., v. William D. Baker Co., D.C., 100 F.Supp. 773.

■ Furthermore, plaintiff has actively participated in the proceedings of the State court. It failed to raise illegality of Joint Board's demand under Section 302 of the Labor Management Relations Act, although plaintiff had every opportunity to do so. This failure, coupled with the plaintiff's additional failure

to perfect its appeal, prevents plaintiff from attempting to relitigate the controversy before this Court. Angel v. Bullington, 330 U.S. 183, at pages 189–190, 67 S.Ct. 657, at page 661, 91 L.Ed. 832, wherein Mr. Justice Frankfurter, speaking for the Court, wrote:

"If a litigant chooses not to continue to assert his rights after an intermediate tribunal has decided against him, he has concluded his litigation as effectively as though he had proceeded through the highest tribunal available to him. An adjudication of an issue implies that a man had a chance to win his case. The chance was necessarily afforded by the North Carolina litigation. It was in process of determination when the Supreme Court of North Carolina decided it against him. He forewent his right to have a higher court, this Court, enable him to win his chance by holding that he was right and that the North Carolina Supreme Court was wrong. He cannot begin all over again in an action involving the same issues before another forum in the same State."

Upon oral argument of this motion, we posed the question: "What irreparable damage will be suffered by plaintiff if defendants are not enjoined from collecting this judgment?" The plaintiff has failed to present us with a satisfactory answer. The solvency of the defendants and their financial ability to pay the amount of plaintiff's demand is undisputed. To justify issuance of a preliminary injunction, plaintiff must show that there is a danger of irreparable loss or damage and that such danger is immediate (15 U.S.C.A. § 26; Lawrence v. St. Louis-San Francisco Ry. Co., 274 U.S. 588, 47 S.Ct. 720, 71 L.Ed. 1219; Barrett v. City of New York, C.C., 183 F. 793). The threat of injury must be real, not fancied, actual, not prospective, and threatened, not imagined (Weeks v. Alpert, D.C., 131 F.Supp. 608, at page 609). The burden of proof is entirely upon the plaintiff (Evening News Publishing Co. v. Allied Newspaper Carriers of New Jersey, D.C., 149 F.Supp. 460). The plaintiff has not carried its burden.

Plaintiff's motion is denied.

So ordered.