**BUDGET DRESS CORP., Plaintiff,**

v.

**JOINT BOARD OF DRESS AND WAISTMAKERS' UNION OF GREATER NEW YORK and its Constituent Locals, and Charles S. Zimmerman, Nathaniel M. Minkoff and Leon Namenwirth, individually and as General Manager, Secretary-Treasurer and President, respectively, of the Joint Board of Dress and Waistmakers' Union of Greater New York; The International Ladies' Garment Workers Union, AFL-CIO; and The Popular Priced Dress Manufacturers' Group, Inc., Defendants.**

United States District Court
S. D. New York.
Aug. 25, 1961.

See also 24 F.R.D. 506.

Fellner & Rovins, New York City, for plaintiff (Morris J. Fellner and Leonard Rovins, New York City, of counsel).

Schlesinger & Bloom, New York City, for defendants Joint Bd. of Dress and Waistmakers' Union, Zimmerman, Minkoff and Namenwirth (Emil Schlesinger and Max Bloom, New York City, of counsel).

Morris P. Glushien, New York City, for defendant International Ladies' Garment Workers, Inc.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant The Popular Priced Dress Manufacturers' Group, Inc. (Charles Ballon, Eugene Kline and Raoul Gersten, New York City, of counsel).

RYAN, Chief Judge.

In this suit filed to recover moneys paid into a Health and Welfare and Retirement Fund, and for injunctive relief, defendants have moved for summary judgment. Recovery of these payments and the prayer for injunctive relief to restrain further collections are predicated on an alleged violation of Section 302(a) (b) (c) of the Taft-Hartley Act, 29 U.S.C.A. § 186(a) (b) (c).

The pertinent portions of this anti-bribery statute[1] provide that:

> "(a) It shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting commerce.

> "(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value.

> "(c) The provisions of this section shall not be applicable * * * (2) with respect to the payment or delivery of any money or other thing of value in satisfaction of a

---

[1] In enacting Section 302 of the Taft-Hartley Law, Congress was concerned primarily with the corruption of collective bargaining because of bribery of union representatives by employers and also the abuse of power by the union leaders in exacting tribute for labor peace. Arroyo v. United States, 1959, 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915.

It should be noted that Section 302 of the Act (Title 29 U.S.C.A. § 186) is entitled "Restrictions on payments to employee representatives; exceptions; penalties; jurisdiction; effective date; exception of certain trust funds". The Section provides no limitation on the amount or the method of computation of contributions which are within the specified exemptions.

**6**

judgment of any court or a decision or award of an arbitrator or impartial chairman or in compromise, adjustment, settlement or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress; * * * or (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents); * * * ".

It is further provided with respect to this quoted subdivision (5) that this exemption shall not apply unless the following standards are met: (A) the payments are held in trust "for the purpose of paying, * * * for the benefit of employees, their families and dependents" certain stated benefits, such as retirement and welfare benefits; (B) the detailed basis on which payments are made is set forth in a written instrument, and employers and employees are equally represented in the administration of the trust, together with a neutral person empowered to break deadlocks; and (C) the payments used for retirement purposes are held in trust.[2]

It is plaintiff's claim that the statute has been violated in that the payments in suit were not for "the sole and exclusive benefit of the employees of such employer" as required under (5) of the section, because they were made on behalf of non-union employees.

Plaintiff, a New York corporation, is a designer, manufacturer and distributor of dresses in the retail trade and is called a jobber. For more than twenty years and up to January 31, 1958, plaintiff was a member of the defendant The Popular Priced Dress Manufacturers' Group, Inc. (hereafter, Popular Associa-

tion), a membership organization which represents employers in the negotiation of collective bargaining agreements with defendants The International Ladies' Garment Workers' Union, AFL-CIO (hereafter, ILGWU), and the Joint Board of Dress and Waistmakers' Union of Greater New York (hereafter, Joint Board).

The defendant Joint Board is an unincorporated association—affiliated as a separate group with the ILGWU, a national labor organization organized into locals on the basis of and a recognition of certain craft, industrial, language and geographical factors. It is composed of delegates elected from the several locals. It transacts business of common interest for each local (including negotiating, administering and enforcing the respective collective agreements). During the period in suit, the Joint Board represented four locals of the ILGWU: Local 22, composed of operators, samplemakers, drapers, finishers, cleaners, etc.; Local 10, composed of cutters; Local 60, composed of pressers; and Local 89, composed of dressmakers of all crafts except cutters. The Joint Board also represents affiliates located outside New York City but involved in the production of dresses for manufacturers or jobbers located in New York City. The remaining defendants, Charles S. Zimmerman, Nathaniel M. Minkoff, and Leon Namenwirth are joined individually and as General Manager, Secretary-Treasurer and President, respectively, of the Joint Board.

The payments, recovery of which is sought in the total sum of $61,480.97, were made during the period March, 1954 through January, 1958, under two collective agreements between Popular Association and ILGWU and Joint Board —the first dated February 1, 1951 and modified and extended by agreement dated July 15, 1953 to January 31, 1955; the second dated February 1, 1955 effective to January 31, 1958.

---

2. Statute in effect August 6, 1959 when suit was filed; the statute was amended

(Landrum-Griffin Act, September 14, 1959) in respects not germane.

Plaintiff as a member of Popular Association was bound by these agreements until its resignation from the Association on January 31, 1958.

Under the agreements, plaintiff undertook to maintain a union shop for the manufacture of garments on its premises and, in the event that its garments were manufactured by contractors, that it would deal only with those who maintained union shops and were designated and registered; and, further, that, if it dealt with non-union, or non-registered, or non-designated contractors, it would withdraw such work or forfeit all its rights under the agreement while continuing to be bound by its obligation to pay damages for each violation. It also agreed to distribute its work equally among its inside shop and the contractors with whom it dealt.[3]

The Health and Welfare Fund was first established under a collective agreement as early as 1944 and the Retirement Fund in 1947.[4] The funds were continued in each succeeding agreement (including the two agreements with Popular Association of February 1, 1951 and February 1, 1955) and are found provided for in paragraph "28" of the agreements.

Under paragraph "28", plaintiff as a member of Popular Association bound itself to pay to Joint Board for and on behalf of the Health and Welfare and Retirement Funds a stated percentage of the weekly wages of all the workers covered by the agreement employed in its inside shop—if it maintains one—and in the shops of its contractors. The payments are to be computed, reported and made in the manner promulgated by an

Impartial Chairman and a specific portion of the payments is allocated to each Fund. It is provided, further, that the payments are not to constitute or be deemed wages due to workers. Payments of the amounts due are to be enforced only by the Joint Board on behalf of the Funds. The Funds are pooled for the joint benefit of all the workers and not for the benefit of any individual worker. The Funds are jointly administered by Trustees representing labor and management, each having an equal vote, and an Impartial Chairman being specifically designated to break any deadlock.

In order to insure compliance with the provisions of paragraph "28", the Union is given the right to examine the books and records of every member of the Association once each month, or whenever it has reason to believe that a member is dealing with non-union, non-registered or non-designated contractors. In the event of such dealing, or falsification, or refusal to produce the books and records, the member shall forfeit all rights and privileges under the agreement. Monthly reports were required to be filed by all jobbers and manufacturers, whether operating an inside shop or with contractors.

Eligibility for benefits payable under the Funds is determined under Rules and Regulations adopted by the Board of Trustees of each of the Funds. Under the Health and Welfare Fund, "covered workers" are those employed in a shop within the membership and shop jurisdiction of the local of the union for whom their employer makes payments directly or indirectly to the Funds on wages

3. An "inside shop" is defined as one owned or controlled by a member of the Association in which all garments are produced from his own material; a "contractor" as one who makes up garments from material delivered by a manufacturer or jobber; a "manufacturer" as one who produces all or part of his garments in his own factory and from his own materials; a "jobber" as one who does not produce garments in his own factory but has them made by contractors and who may or may not employ cutters and samplemakers.

4. The second proviso of Section 302(c) was adopted primarily for the benefit of the ILGWU health and welfare agreements which included payments for pooled vacations. (Senate proceedings, page 4881, May 8, 1947.) It seems apparent that the Congress was advised of the full provisions of the then existing collective bargaining agreements which governed the contributions by the employer to these funds.

earned by such workers. A "covered employer" is a jobber, manufacturer or contractor who, under agreement with the Union, makes payments to the Funds on wages earned by the workers "in the crafts covered by the agreement." The definitions under the Retirement Fund are the same except that an employer is called a "contributing employer".

The Impartial Chairman, pursuant to paragraph "28" of the agreement, issued four promulgations (in 1950, 1954, 1955 and 1956), requiring each jobber or manufacturer to pay to defendant Joint Board on behalf of the Funds the percentage stated in the agreement on the weekly wages of all workers in the crafts covered by the agreement in the inside shop, and, in addition, a lesser percentage on the gross total payments made by him to his contractors—for labor, services, and overhead.

Neither the workers nor the contractors who manufacture for the jobbers or manufacturers make any payments to the Funds.

Finally, the agreements provide that all disputes between the parties are to be arbitrated; that the decision of the Impartial Chairman shall be final and binding and complied with within twenty-four hours; and that failure to comply shall forfeit to the member all rights and privileges under the agreement; that the decision of the Impartial Chairman shall have the effect of a judgment entered on an award under the Arbitration Laws of New York, entitling the entry of judgment in court against the defaulting party; and that it may contain mandatory or prohibitory directions and orders.

No contentions is made that the Funds were not administered in strict compliance with the requirements of Section 302(g). It is clear from the documentary evidence submitted by plaintiff—which consists in the main of statements from the Accounting Department of the Funds, cancelled checks drawn by plaintiff payable to the Funds, separately or jointly with the Board, the endorsements on these checks and the ledger sheets of the Funds—that all the payments were actually demanded by the Funds; that when made by plaintiff, they were intended for and actually received by the Funds and that no personal financial benefit was derived by either the individual defendants or the Unions.

Essentially, plaintiff's claim is based on the contention that payments made by it on behalf of employees of non-union contractors are in violation of the provisions of Section 302(c) (5) in that these moneys were paid on the wages of "non-covered" workers employed by "non-covered" employers—ineligible to receive benefits under the Funds and, therefore, in contravention of the statutory requirements that the trust fund money be paid and received for the sole and exclusive benefit of covered and eligible employees.

Although it appears that some or all of these moneys in suit were paid into the Funds computed on payments for work performed for plaintiff by a union contractor, defendants in order to obviate any possible question of fact have stipulated that this Court may assume (for the purposes of this motion only) that the sums paid were based upon payments made by plaintiff to non-union contractors, that the workers in the shops of these contractors are not "covered workers" and not employed by "covered" employers; and that, consequently, they are not eligible to receive benefits from these Funds.

On the basis of this assumption, defendants' position is that the payments do not violate the statute and that the issue is *res judicata* by reason of a final judgment rendered in the New York State Supreme Court (Matter of Minkoff, N.Y.L.J., May 11, 1960, p. 12, col. 4; affirmed Minkoff v. Budget Dress Corporation, 12 A.D.2d 905, 214 N.Y.S.2d 242.

There are three payments involved in this suit: (1) for $44,000 (corrected from $49,000) paid on an unconfirmed award of the Impartial Chairman for the period March, 1954–May, 1957; (2) for $17,480.97 (corrected from $22,000) paid

after confirmation of the award and denial of a stay to enforce collection for the period May, 1957–January, 1958; and (3) for $13,759.49, a confirmed award, with judgment entered, remaining unpaid, the collection of which plaintiff seeks to enjoin by this suit. As to the recited facts of these awards, there is no dispute.

It is clear, therefore, that assuming these payments to be otherwise valid, they are exempted from the statute (Section 302(c) (2)) as made in satisfaction of a judgment of a Court and of an award of an impartial chairman. Whether the payments come within the second exception (Section 302(c) (5)) is the issue upon which their validity must depend, for exemption under the first clause would not automatically validate a payment otherwise prohibited. Minkoff v. Scranton Frocks, D.C., 181 F.Supp. 542, 2 Cir., 279 F.2d 115.

The history of awards (1) and (2) is fully set forth in our prior opinion denying plaintiff a temporary injunction in this suit (D.C., 178 F.Supp. 699). We assume familiarity with it; we review only the events since the date of that opinion.

The denial of a stay pending appeal was affirmed by the Court of Appeals on December 11, 1959, and the appeal was never prosecuted. The surety on the bond has since paid $18,747.86 (the award, interest and costs), and as in the case of the $44,000 payment, the proceeds have been deposited to the credit of the Funds. The claim contained in plaintiff's second count of its complaint to restrain collection of this payment has become moot.

The third award arises out of a complaint filed by Joint Board against plaintiff at the time it obtained the settlement of the first award of $44,000. This complaint charged plaintiff with violation of the collective agreement by dealing with specified non-union contractors. It resulted in an award which was confirmed by the New York State Supreme Court by order dated October 28, 1957, assessing damages of $5,000 against plaintiff (which it paid but are not involved here)

and enjoining it from further violations. Specifically, plaintiff was enjoined from failing to make timely payments to the Funds, from manufacturing garments with non-union, non-designated and non-registered contractors, and from failing to settle piece rates of garments produced by such non-union contractors.

An examination of plaintiff's books shortly after its resignation from the Association on January 1, 1958, to ascertain whether prior to this plaintiff had been complying with the injunction, revealed that plaintiff had violated the order in that it had been dealing with non-union contractors from October 15, 1957 to the date of its resignation. The examination also disclosed that plaintiff had failed to pay moneys due the Funds for the period January, 1956 through June, 1957—a period which preceded the injunction of October, 1957.

Following this examination of plaintiff's records, two complaints were filed before the Impartial Chairman against plaintiff—one seeking damages and the other back payments. Thereupon, plaintiff moved in the New York State Supreme Court to stay the arbitration of these complaints before the Impartial Chairman, urging invalidity of the agreements as being in "restraint of trade". This relief was denied by the New York State Supreme Court on April 6, 1959 (as was a stay pending appeal), an appeal filed by plaintiff from this was subsequently dismissed for lack of prosecution on September 17, 1959. It was during this time, and on June 29, 1959, that the Impartial Chairman rendered the award of $13,759.49 for payments found to be due the Funds, and the award for $38,650, as liquidated damages (which is not involved in this suit).

It was when the Joint Board moved in the New York State Supreme Court to confirm both these awards that plaintiff removed the proceedings to this Court on jurisdictional grounds as a suit under Section 301(a), 29 U.S.C.A. § 185(a). Remand was ordered by Judge Dimock of this Court for failure to remove in time (Minkoff v. Budget Dress Co., 180 F.

Supp. 818). Plaintiff then applied to the New York State Supreme Court for a stay which was denied by opinion dated June 29, 1959 confirming both awards and directing the entry of judgment. In memorandum opinion, the New York State Supreme Court overruled plaintiff's contention, writing "that the arbitrator's award is barred by Section 302 of the Taft Hartley Law (29 U.S.C. section 186). I can find no merit in this contention for the reason so convincingly stated by Judge Metzner in Minkoff v. Scranton Frocks, Inc. (39 C.C.H.Lab.Cas.Par. 66, 255); and by Judge Weinfeld in Greenstein v. National Skirt & Sportwear Association, D.C., 178 F.Supp. 681  *  * ". N.Y.L.J. May 11, 1960, p. 12, col. 4.

On February 14, 1961 the Appellate Division of the New York State Supreme Court unanimously affirmed without opinion (12 A.D.2d 905, 214 N.Y.S.2d 242) and on April 20, 1961 denied plaintiff's motion for leave to appeal; on June 1, 1961, a motion for leave to appeal was denied by the New York Court of Appeals. 9 N.Y.2d 613, 217 N.Y.S.2d 1026.

It is this final opinion that defendants point to in support of their position that plaintiff is barred from litigating the validity of all the payments under Section 302 on principles of *res judicata* and collateral estoppel.

If there ever was any genuine issue of fact concerning the eligibility of non-covered workers to the benefits of the Funds, it has been completely eliminated by defendants' concession; the sole question presented is one of law on the interpretation and applicability of Section 302 to the payments in suit. This is a determination which we find has not been made so as to bar the suit on the principles of *res judicata* or collateral estoppel.

While we observed in our decision denying plaintiff an injunction (D.C., 178 F.Supp. 699, 703) that by its failure to raise the question of illegality under the Taft-Hartley Law in the state court with respect to the collection of the $18,535 award, plaintiff had waived its right to here litigate the question, we do not now base our present determination on any such reason. Our statement was made solely in connection with a finding that plaintiff had not shown such likelihood of success as to warrant the issuance of injunction. See Greenstein v. National Skirt and Sportwear Association, supra.

Whether the legality of a payment under Section 302 could have been tested in that local state forum and, if so, whether a decision there would be binding on this Court (involving as it would interpretation of a federal statute) is a question too unsettled to undertake to decide when such decision is not essential to our determination. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; Minkoff v. Scranton Frocks, D.C., 172 F.Supp. 870; Fay v. American Cystoscope Makers, D.C., 98 F.Supp. 278; but see Minkoff v. Budget Dress, D.C., 180 F.Supp. 818 and 12 N.Y.L.J. col. 4 May 11, 1960 (J. Hecht).

In any event, as we have already noted, plaintiff did raise the question of legality under Section 302 before the New York State Supreme Court in the proceedings to confirm the third award of $13,759.49; and Justice Hecht overruled objection to the Court's jurisdiction on the basis of the federal court's remand in Minkoff v. Budget Dress, supra.

Although we agree with the conclusion reached, we do not think the decision an adjudication on the merits of the question before us; nor are we barred from re-examination of it on principles of *res judicata*. First, the jurisdiction of the state court over the issue is far from settled; secondly, it does not appear that the decision declaring the rights of the parties represents a direct, independent determination of the facts and the law based on an examination of the statute and its application to the facts. It does appear that the state court relied on the interpretation of the able District Judges cited (one of which, in Minkoff v. Scranton Frocks, reached final decision on the merits) and, therefore, found it unnecessary to reach its own decision; but neither of the cases cited constitutes a bar

to the claims of the instant suit since there was no identity of parties. Because of the uncertainty of the state court's jurisdiction and of what was actually decided by it, we conclude that plaintiff is not estopped from re-litigating the issues before us. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; Partmar Corp. v. Paramount Corp., 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532; Southern Pacific R. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355.

This is not to say, however, that in making our independent examination we would be justified in entirely disregarding the opinion and judgment of that state court, as well as the three decisions in this Circuit relating to this question between similarly situated parties. We do not do so for we unreservedly agree with them.

We start out with Greenstein v. National Skirt & Sportwear Association, supra, which was a suit brought under Section 302 to recover and restrain collection of payments made to the Welfare Fund, as well as payments to another Fund as liquidated damages for breach of an agreement to deal only with union contractors. Judge Weinfeld found that the likelihood of plaintiff's success was so remote as not to justify an injunction against collection of such payments.

Although the precise question before Judge Weinfeld was the legality of the liquidated damage payments, in appraising the merits of plaintiff's claim, he discussed the Welfare Fund provisions. With respect to plaintiff's claim that the non-union employees derived no benefit from these payments, Judge Weinfeld commented that:

"* * * if plaintiffs had complied with the agreement and all garments were manufactured in union shops, whether inside or contractors' shops, no issue would arise, since in that circumstance the payments from the three designated welfare funds would be based upon wages paid to employees of union shops, and the benefits of the fund would extend to all employees of a covered employer, regardless of whether such employees were or were not union members." 178 F.Supp. at page 685.

With respect to the fund set up for liquidated damages, Judge Weinfeld stated that, if it paralleled the welfare funds in terms of benefits, it could not be challenged as payments made to the welfare funds were in strict compliance with the statute since they were for the sole and exclusive benefit of employees. Although there was no adjudication of the precise question before us, the language with respect to the legality of the funds is pertinent, significant and compelling, and not dictum.

Judge Metzner, in Minkoff v. Scranton Frocks, D.C., 181 F.Supp. 542, 548, affirmed 2 Cir., 1960, 279 F.2d 115, had before him precisely the same Funds and type of agreement between the Union and Joint Board. The argument there made was that because some of the contractor's employees had been expelled from the union, they were not eligible for benefits under the Funds and that, consequently, the payments made on their behalf to the Funds were in contravention of the statutory requirement that the payments be for their sole and exclusive benefit. Judge Metzner, confirming the award of the arbitrator, held that under the Rules and Regulations (the very ones applicable in this suit) the definition of "covered worker" as "within the membership and shop jurisdictions of the Locals of the Union" did not make Union membership a condition to eligibility but merely referred to the craft and geographical area of employment for purposes of determining benefits under the Fund, which benefits varied because of other different benefits available to the workers under the laws of the various states covered by the district encompassed by the Funds. He further held that denial of benefits, if any, was a matter to be settled between the worker and the Funds and no part of the statutory scheme of Section 302(c) (5), and that "by no stretch of imagination" could the

plans be considered other than legitimate.

Finally, in Kreindler v. Clarise Sportswear Co., D.C.1960, 184 F.Supp. 182, a similar contention was made by a manufacturer whose contractors' employees were not unionized. The Court, confirming the arbitrator's award, assumed (and it does not appear whether it was contested) that such non-union workers were not eligible for benefits under the Funds but said that, nevertheless, since the payments were of the type contemplated by the statute—for the sole and exclusive benefit of employees—there was no need that they be set up by each employer for his own particular employees.

We conclude, as have our colleagues before us, that the statute is in no way concerned with the technical aspects of determining and administering benefits under legitimate plans as defined and made up in accordance with statutory directive (302(c) (5) (B)), whose sole purpose is to provide benefits for employees of the dress industry covered by the collective bargaining agreements; and that the rules and regulations in question prescribing eligibility under the plans are consonant with this purpose. So long as the funds are used for the benefit of the employees and not diverted to other uses, the statutory immunity applies to these payments—regardless of whether in a proper case a remedy might lie open to an individual employee against the Trustees of the Fund. No claim is here made that these payments were not so used.

Finally—and we think it highly significant—plaintiff was bound under its collective agreements to deal only with union contractors; such a closed shop arrangement was perfectly valid (29 U.S.C.A. 158(a) (3)). The awards made against it establish that it repeatedly violated its agreement and falsified its records in order to avoid detection of its breaches. Had plaintiff abided by its obligations, it would not have had even a colorable claim under the statute; by violating its agreement it "fashioned [its] own weapon of attack against the defendants." Greenstein v. National Skirt, supra, 178 F.Supp. at page 690. Furthermore, although plaintiff consistently attacked the awards, it did not raise the question of a Taft-Hartley violation until all other avenues of legal attack had been tried and had failed.

The payments in suit qualify as valid under subdivision (c) (5) and are exempt from the strictures of subdivisions (a) and (b); they are also exempt under subdivision (c) (2) as payments made in satisfaction of a judgment of a Court and of an award of the impartial chairman.

Motion is granted; the complaint is dismissed; the Clerk is directed to enter judgment upon the merits for defendants with taxable costs and disbursements.