Theodore MARITAS, Conrad F. Olsen, John J. O'Connor, James F. Viggiano, Denis R. Sheil, John J. Brennan, Theodore K. Knowles, Theodore E. King, Kurt Tolksdorf, and Alfred Finkel, as Trustees of the New York City District Council of Carpenters Benefit Funds, Plaintiffs,

v.

CARPET LINOLEUM SERVICE, INC., William Alexy, James McWilliam and Insurance Company of North America, Defendants.

No. 78 Civ. 1552 (CHT).

United States District Court, S. D. New York.

May 29, 1980.

Finley, Kumble, Wagner, Heine & Underberg, New York City, for plaintiffs; Gerald M. Levine, New York City, of counsel.

Miller & Bush, New York City, for defendants; Irving T. Bush, New York City, of counsel.

## OPINION

TENNEY, District Judge.

In this dispute over contributions allegedly due a union benefit fund under the provisions of a collective bargaining agreement, the defendants move to vacate a default judgment and for partial summary judgment. The default is vacated, and summary judgment is granted to the defendants in part, to the plaintiffs in part, and denied in part.

### Background

The facts are uncontested. Plaintiffs are trustees of the New York District Council of Carpenters Benefit Funds ("Fund"). Defendant Carpet Linoleum Service, Inc. is a New Jersey corporation that provides and installs commercial carpeting. Defendants William Alexy and James McWilliam are president and secretary, respectively, of the corporation. Defendant Insurance Company of North America was guarantor of payment for contributions due from the corporation to the Fund.

While performing installation work in New York City from October 1975 through January 29, 1977, the corporation became a member of the Greater New York Resilient & Carpet Flooring Association ("Association"), a trade association that had previously entered into a collective bargaining agreement with the New York City District Council of Carpenters ("Union") covering employees engaged in installing carpeting in the New York City area. The corporation did not become a signatory to the agreement, but, as a member of the Association, adhered to its terms.

On January 29, 1977, Carpet Linoleum Service ceased work in New York City and laid off its local laborers. Since then, none of its employees has performed work within the jurisdiction of the collective bargaining agreement. On March 1, 1977, the corporation resigned from the Association. Eight days later, the guarantor cancelled its bond. On March 28, 1977, an agreement was reached between the Fund and the corporation settling a delinquency in making contributions during the period from October 1975 through January 29, 1977 and providing for a schedule of payments. At that time, the corporation notified the Fund that it had discontinued all work within the jurisdiction of the collective bargaining agreement.

During the second period in dispute, January 29, 1977 through December 31, 1977, Carpet Linoleum Service did not employ laborers within the jurisdiction of the collective bargaining agreement, but did subcontract local installation work to other employers. Defendants contend, and plaintiffs do not dispute, that the subcontractors were not signatories to a collective bargaining agreement with the Union and did not employ workers entitled to benefits from the Fund.

The amended complaint sets out five causes of action. The first asks for contributions due the Fund for the period prior to January 29, 1977. The corporation and its guarantor admit liability for these contributions. The second alleges a failure to pay contributions for the period February 5, 1977 through December 31, 1977 allegedly due under the subcontractors clause of the collective bargaining agreement.[1] The third and fourth causes of action allege liability of the officers of the corporation for its debts under section 198–c of the New York Labor Law. The fifth cause of action states a claim against the guarantor based

1. Article IX, section N of the Collective Bargaining Agreement, attached as Exh. A to Plaintiffs' Interrogatories dated July 21, 1978, provides:

 The Employer agrees that it will be responsible and liable for payments of all wages and fringe benefits for any Subcontractor who has NOT signed an Agreement with the New York City and Vicinity District Council of Carpenters, and who is engaged by the Employer to perform work that falls within the jurisdiction, as set forth herein, of the New York City District Council of Carpenters.

on its bond. Jurisdiction is based on 29 U.S.C. § 185(a). Plaintiffs allege that jurisdiction for the state law claims against the individual defendants is based on the principle of pendent jurisdiction.

*Discussion*

■ Under Federal Rule of Civil Procedure ("Rule") 60(b), a judgment may be vacated "upon such terms as are just . . for . . . (6) any . . . reason justifying relief." The rule reflects the federal courts' preference for deciding cases on their merits. In this action, defendants stipulated to the service of an amended complaint, but mistakenly delayed service of an amended answer until they served and filed a motion to dismiss on May 2, 1979, one month late. This Court, unaware of the filed answer, signed a default judgment one day later. It is beyond question that defendants, who had timely responded to the original complaint and submitted to interrogatories, intended to defend the action. They raise colorable defenses, some of which challenge the subject matter jurisdiction of this Court. In these circumstances, justice requires relief from the judgment.

*The Subcontractors Clause*

Plaintiffs ask for payment of contributions to the Fund based on the hours worked by nonunion employees of the subcontractors from February through December 1977. During this period, no employees of Carpet Linoleum Service or the subcontractors were eligible for union benefits.

Defendants argue that enforcement of the subcontractors clause of the collective bargaining agreement, when the nonsignatory employer has withdrawn from the signatory association and has no employees who are eligible for union benefits would violate section 302(a)(1) of the Labor Management Relations Act of 1947 ("Taft Hartley Act"), 29 U.S.C. § 186(a)(1). The section provides:

> (a) It shall be unlawful for any employer or association of employers . . to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

> (1) to any representative of any of his employees who are employed in an industry affecting commerce. . . .

Section 302(c) provides exemptions for payments to certain trust funds: ˙

> (c) The provisions of this section shall not be applicable . . . (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families, and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided*, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer . . . ; (6) with respect to money or other thing of value paid by any employer to a trust fund established by such representative for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs: *Provided*, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds. . . .

Plaintiffs argue that *Walsh v. Schlecht*, 429 U.S. 401, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977), is dispositive. In *Walsh*, a claim similar to the defendants' was rejected by the Supreme Court when raised by a signatory employer who subcontracted some work to nonunion employers but retained some covered employees. The Court concluded that so long as

the [subcontractors] clause merely obligates [the contractor] to pay contributions to the funds *measured by* the hours of carpentry work performed at the project by the subcontractor's employees, the benefits being payable only to carpenters employed by the contractor and other signatory employers, then the clause is authorized by the exceptions to the general prohibition of § 302(a) enacted in §§ 302(c)(5) and (6).

*Id.* at 407, 97 S.Ct. at 684 (original emphasis). *Walsh* adopted the reasoning of *Kreindler v. Clarise Sportswear Co.*, 184 F.Supp. 182 (S.D.N.Y.1960). *Kreindler* held that so long as *some* of the employer's employees will benefit from contributions to a trust fund under the subcontractors clause, it is irrelevant that some employees, including the subcontractor's employees, by whose hours payments are measured, are ineligible under the benefit plan. *Id.* at 184. However, section 302(a)(1) by its terms prohibits enforcement of the subcontractors clause where *no* employee of the obligated employer is entitled to benefits. *See Walsh v. Schlecht, supra; Seymour v. Hull & Moreland Eng'r*, 605 F.2d 1105, 1115 (9th Cir. 1979).

 Plaintiffs, relying on *Paul v. Lindgren*, 375 F.Supp. 843 (N.D.Ill.1974), argue that the employer is bound until the end of the term of the collective bargaining agreement notwithstanding withdrawal from the signatory association. In *Paul*, the court stated the rule "that an employer may not withdraw from a duly established multi-employer bargaining unit, except upon adequate written notice, given prior to the date set by the contract for modification or to the agreed upon date to begin the multi-employer negotiations," and concluded that the defendants had not established that they had effectively withdrawn from the association. *Id.* at 851. *See, e. g., NLRB v. Independent Association of Steel Fabricators*, 582 F.2d 135, 145–46 (2d Cir. 1978); *NLRB v. John J. Corbett Press, Inc.*, 401 F.2d 673 (2d Cir. 1968); *NLRB v. Sheridan Creations, Inc.*, 357 F.2d 245, 247 (2d Cir. 1966), *cert. denied*, 385 U.S. 1005, 87 S.Ct. 711, 17 L.Ed.2d 544 (1967); *Sunrise Undergarment Co. v. Undergarment & Negligee Workers' Union, Local 62*, 419 F.Supp. 1282, 1284 (S.D.N.Y.1976). This rule, which serves to discourage use of withdrawal as a bargaining ploy, *NLRB v. Independent Association of Steel Fabricators, supra*, 582 F.2d at 147, has no applicability here. The employer's withdrawal did not occur near the end of the agreement's term and was not related to negotiations for a new contract. In these circumstances, the employer was free to withdraw from the Association, *see Budget Dress Corp. v. Joint Board of Dress & Waistmakers Union*, 198 F.Supp. 4, 7 (S.D.N.Y.1961), *aff'd*, 299 F.2d 936 (2d Cir.), *cert. denied*, 371 U.S. 815, 83 S.Ct. 27, 9 L.Ed.2d 56 (1962), and this withdrawal provided a second reason why further contributions were forbidden. Once the nonsignatory employer withdrew from the Association, it was no longer obligated under the Association's collective bargaining agreement, *id.*, and was therefore prohibited from contributing to the Fund by section 302(a)(1), which permits only payments made pursuant to a written agreement. *See* 29 U.S.C. § 186(c)(5)(B). *See also Moglia v. Geoghegan*, 403 F.2d 110, 116 (2d Cir. 1968), *cert. denied*, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969); *In re Typo-Publishers Outside Tape Fund*, 344 F.Supp. 194 (S.D.N.Y.1972), *aff'd*, 427 F.2d 374 (2d Cir.), *cert. denied*, 414 U.S. 1002, 94 S.Ct. 357, 38 L.Ed.2d 238 (1973).

In any event, even if the withdrawal were ineffective the subcontractors clause could not be enforced to require contributions during the time when no employees were eligible for benefits. Therefore, summary judgment is granted to the corporation on the second cause of action.

### *"Pendent Party" Jurisdiction*

Plaintiffs allege in the third and fourth causes of action that individual officers of the corporation are personally liable under section 198–c of the New York Labor Law for the corporation's failure to pay the contributions that are the subjects of the first and second causes of action. Defendants respond that the Court lacks subject matter

jurisdiction over the individual defendants. Plaintiffs, in turn, reply that "[t]his Court has jurisdiction over this non-Federal action on principles of pendent jurisdiction." Affidavit of Robert Cartledge, sworn to June 6, 1979, ¶ 6. Plaintiffs argue that *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), has decided the issue now before the Court. Trustees' Memorandum at 7. *United Mine Workers*, however, involved a pendent claim, not pendent parties. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274 (1978); *Aldinger v. Howard* , 427 U.S. 1, 2, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Pendent party jurisdiction is a "subtle and complex question with far-reaching implications." *Id., quoting Moor v. County of Alameda*, 411 U.S. 693, 715, 93 S.Ct. 1785, 1798, 36 L.Ed.2d 596 (1975). Plaintiffs have not briefed the issue beyond their reliance on *United Mine Workers, supra. See generally, e. g., Federal Deposit Ins. Corp. v. Otero*, 598 F.2d 627 (1st Cir. 1979), and cases cited therein. Rather than addressing the question of subject matter jurisdiction over the third and fourth causes of action without more extensive briefing by the parties, the Court will give plaintiffs thirty days from the entry of this Opinion and Order to file papers on the issue, failing which these causes of action will be dismissed.[2]

### Conclusion

Defendants concede liability on the first and fifth causes of action in the amount of $6,370.00. Summary judgment is granted to plaintiffs to that extent. The Court grants the corporation's motion for summary judgment on the second cause of action, dismissing this cause of action. On the third and fourth causes of action against the individual defendants, plaintiffs have thirty days from the entry of this Opinion and Order to file papers briefing the issue of subject matter jurisdiction, failing which these two causes of action will be dismissed.

So ordered.

[2.] In deciding whether to brief the issue of jurisdiction over the third and fourth causes of action, plaintiffs may wish to consider that, even if such jurisdiction exists, the same defense that has been raised successfully against the second cause of action would presumably be available, along with other defenses, against these causes of action.